The 9th Circuit is now in session. Please be seated. Good morning, ladies and gentlemen. Welcome to the 9th Circuit. We're very pleased to be with you this morning. Judge Desai, can you hear us? Yes. Thank you, Judge Beide. Judge Desai is the presiding judge for the panel, and she is not able to be with us this morning in person. She is appearing by video and has asked that I conduct the proceedings in the courtroom today. Judge Desai and I would like to welcome our colleague, Judge Jenny Parker, from the 2nd Circuit. We want to thank him for his continued service to the United States and to this court. We have three matters that were ordered submitted on the briefs. That is Granados Marquez v. Garland, Rodriguez Martinez v. Garland, and Olvera Gonzalez v. Garland. The first matter on the oral argument calendar is a combined matter of Tilley v. Blumberger and Khalifa v. I'm sorry, that is Khalifa v. A.H. Okay. And counsel, I understand we're splitting some time. Government is going, sorry, Mr. Freitas, you'll be going first. Is that correct? Okay. And then we'll be hearing from Mr. Soder and then from Mr. Winokur. Okay. All right. Mr. Freitas, you may proceed whenever you're ready. Thank you, Your Honor. May it please the Court, Matthew Freitas for appellants, Dr. Tilley, Dr. Khalifa, Dr. Portia Reif, and Eisner Helms, along with my colleagues, Rosie Griffin and Brendan Tyler. Your Honor, the federally supported Health Centers Assistance Act, which I'm going to refer to as FSCA here, was amended in 1995, and it established a number of procedural protections to remedy problems that were experienced between 1992 and 1995 in this program. One of the provisions that it enacted that I'm going to focus on or try to focus on today is the removal provision that's found at 23, 233, subsection L1 and 2. They're both removal provisions. We know that from their plain text. The text in section 233, L1, has in its second sentence the definition of what it's about. That explains the objective of section L1. That's the government trying to remove or having to remove the case on behalf of the deemed defendants. And L2 is there as a removal right to remove if the government doesn't. And it is, I think we can fairly say now in the Ninth Circuit, a removal right that affords the deemed defendant the ability to challenge the government's adverse deeming or adverse coverage, sorry, not deeming, adverse coverage determination. We could call that certification. We could call that determination. But ultimately when the government says we're not going to cover this case, section 233, L2 provides a mechanism to do that. And we know that from Friedenberg v. Lane County, which is a very significant case that didn't come down until after all the briefing by government, council, and plaintiffs was completed. And until that point in time, through all the central district court cases that the governor refers to as a consensus of decisions in California, and including its briefing in Lane County, the government maintained that neither L1 nor L2 provided for a mechanism to review its adverse coverage decisions and that there was no statutory authority. All they said. And you think the principal authority for you to challenge here is under L2? Yes, Your Honor. Now that is prefaced by saying that the Attorney General fails to appear, which apparently was part of the impetus for the 1995 amendments. Correct. Correct. And we think fail to appear is a phrase that cannot be construed to mean simply show up in court and then you can cut off the very review that occurred in the Lane County case. So I say fails to appear within the time prescribed under Paragraph 1. It does. And fails to appear is a pretty common term that we use. If you fail to enter an appearance, is the kind of thing that you end up with some kind of a default judgment, some kind of acquiescence. It does, Your Honor, but I don't think it can be construed out of context with 233L1, which explains what the appearance means. In fact, the Second Circuit. Okay. Let me get you to do this. Let's explain in your view mechanically how these procedures are supposed to work. I'm a physician in the position of your client. I believe I'm entitled to coverage, and I get sued in state court on malpractice tort theories. What happens next? So before that would have taken place, the deemed defendant would have applied for deemed status. That had deemed status, but it's a situation analogous to the ones we're looking at in these two cases where there was some deemed status, but there was a dispute about how far it spread. All right, Your Honor. So then the defendant would send a copy of the complaint to the – Attorney General. No, Your Honor, to the Department of Health and Human Services Office of General Counsel. Section 233B of the Public Health Service Act explains the notification process. I think the McLaurin case out of the Fifth Circuit explains that the duty to notify is to the Department of Health and Human Services, not the Attorney General. What next? So then the Department of Health and Human Services has to, under 233B, promptly notify the Attorney General in D.C., the local U.S. Attorney and Secretary. When that happens, the deemed defendant doesn't necessarily know, which gets to the workability of this 15-day clock concept. The defendant doesn't even know how long it's going to take the Department of Health and Human Services to tell the local U.S. Attorney, so you don't know when the 15 days starts. The defendant waits for a determination as to whether the case is going to get removed. I mean, really, honestly, I don't think they should have. I don't follow you. Let's take it step by step. Sure. So we're going to get this complaint in the hands of an AUSA, then what? What is supposed to happen is the local U.S. Attorney is supposed to ascertain whether the defendant was deemed under Subsection 233G and H. That's the deeming determination that's referenced in L1. It's the only determination that's referenced in L1. The other piece of that language is only designed to ascertain whether that deeming determination exists for the year in which the injury occurred. Because you can be deemed today when you ask the government for coverage. What if the AUSA comes in and says, I got this paper last Thursday. I don't know anything about this. I need time to look into it and figure out what happened and get up to speed. I think one of the tensions that has happened in these cases. In what? The U.S. Attorney is supposed to remove the case. What does that do to the 15-day clock? The U.S. Attorney is supposed to, once they ascertain, is there a deeming certificate? Let's stick with this case. He says, I just got these papers recently. I don't know. Right. He comes into court, he or she comes into court, goes over to the court reporter, Barbara Stanwyck appearing for the government. That appearance, Your Honor, which is supposed to happen within 15 days, is to have the effect that's specified in the second sentence of L2. It's not supposed to provide the U.S. Attorney an opportunity to make the decision you're referring to. But there's two different things here. As I read these statutes, there's two different determinations that have to be made. One is made by the Secretary. That's the deeming decision. So whether you work for a covered entity, that decision is pretty clear here. That Eisner was a covered entity and, therefore, its employees, which included your clients, were deemed to be PHS employees under the first sentence of L1. That should have been an easy certification for the Attorney General to make. Yes, the Secretary has made such a decision. Now the Attorney General reserves the right to come forward at a later time and say, yes, but they were not acting within the scope of their employment, even though they were deemed employees. Those are two different things. So it seems to me that the Attorney General probably made a mistake here by not advising the court up front that this was a deemed entity and, therefore, a rebuttable presumption that your clients were covered. Yes, Your Honor, and I think what that is supposed to do is get the case in the federal court before the U.S. Attorney has an opportunity to make the certification decision. And that's the second determination you're referring to, Your Honor. I think deeming is an advanced decision. It's made like an insurance policy. We know that exists or it doesn't for a year. That's the first one. If that's made, that gets you into federal court. And then the U.S. Attorney is free to come in and say, outside the scope, whatever objections they want to make, which is what we saw in the Lane County case, they're free to do that and they can prevail. How does it get you into federal court? The second sentence of L1 does, Your Honor. So the second sentence of L1 says, such advice. And it doesn't give any other variable or outcome. It says, such advice, referring to the deeming determination advice. Such advice shall be deemed to satisfy 233C. But in my hypothetical, the U.S. Attorney comes in and says, it's understudied. That's our case. Yes, Your Honor. What happens then, in your view? In our view, that scenario is to exist in federal court. The understudy can only refer to the decertification decision, not the deeming. You can't have a prior determination that's understudied. It either was made or it wasn't. But mechanically, then, how does it get removed? The U.S. Attorney notifies the state court that there was a deeming determination that had been made as to the year that the injury occurred for the defendants. But in this case, there is some confusion or dispute about that. So we can't require the U.S. Attorney to make a decision that he hasn't investigated or thought through. You get Rule 11 problems with that. Your Honor, I don't think that's what's being asked for. That's the tension. I genuinely do not see 233C as the certification decision. Congress would not have asked the Attorney General to drop everything, dig into a case factually, and make a certification decision in 15 days. That's also why it's not contemplated. You're in court and you hear the U.S. Attorney say the things I've been asking you over and over. What do you do at that point? So it's a case automatically removed. If the U.S. Attorney does what 233L1, the U.S. Attorney says, I am not sure, I just got these papers, this lawsuit was started 20 days ago, I just got these papers last week, it's under consideration. Right. And what would be under consideration there would be the decision that does not drive the removal. Under consideration is the certification decision. The government makes that in federal court all the time. In fact, the federal government has removed cases to federal court, changed its certification decision, and moved to remand. All right, so I'm just trying to understand mechanically how you think the statute is supposed to work. So if the U.S. Attorney comes in and says, look, I'm not sure, what next? What do you do next? That's a scenario not contemplated by 233L1. It says report a specific thing. So if they come in and don't do that, they're not doing what they're being mandated to do in L1. Does that give you a right of removal? Yes, Your Honor, because then they are not satisfying 233L1, which is to effectuate removal to have the dispute take place in federal court so the defendant can make the case go to federal court. That's perfectly logical, but it's not consistent with the text of the statute, and that's what I'm wrestling with. So it's not the easiest read, Your Honor. I will give you that, but I do think when you look at the whole thing as a whole and you study the phrases, which are packed phrases, when there's a sentence that says advise as to the determination of the secretary under subsections G and H, you have to stop and go through and read. My trouble with this, and I think this has been captured by the questions from Judge Bidey and Judge Parker, and I don't hear you answering this question, so let me try to rephrase it. The deeming decision is made by the secretary long before the lawsuit is filed. We know that Eisner was deemed to be a public health employee, correct? Everyone agrees on that fact. And here, when the AG came into court within 15 days, what the AG might have made a mistake in doing was to not tell the court at that time, look, Eisner was already deemed to be an entity that's covered. So what remedy now is there for the fact that the AG showed up? I think there's no question that the AG showed up within the 15 days, which is why I think that your argument under subsection 2 is difficult to make because the AG appeared within 15 days. What the AG said might have been incorrect, but what is the remedy if the AG says, look, we're still trying to make a determination about the scope of employment because I think that's what the AG was saying. The AG actually was telling the court, we're still considering, it's under consideration whether or not these particular doctors were acting within the scope of employment for purposes of coverage. What happens then? Because what you're seeing right now is that removal should happen, and then later there can be a discussion about the scope of employment. But if we interpret subsection 1 the way that you're arguing to us, that determination is essentially assumed because the language says that such advice shall be deemed to satisfy the provisions of subsection C, which, it goes on to say, means that the entity was acting within the scope of their employment or responsibility. You know, it's a foregone conclusion then. I appreciate that, Your Honor. So I only have 46 seconds left, and I forgot to say if I wanted to reserve. So we'll make sure, counsel, we have lots of questions. Thank you. Sorry, I just neglected to say that. I'm confident that we have lots of questions for opposing counsel as well. So I think that the language that you just referred to, Your Honor, answers the question. It is a constructive or deemed, that's the word that's in the statute, 233-01, says deemed to satisfy. That's the same kind of a legal fiction concept that deems a nonfederal person to be a federal person. That's a constructive concept in law. It's designed for the purpose in L-1 and 2. That's it. It's not to bind the government's hands for all time, and the government's hands are not bound. They go into court sometimes voluntarily and then withdraw their own certification. They have more than enough authority to back out of a certification. The only reason it's being constructively satisfied in 233-01 is to get the case out of state court so that what doesn't happen is this deemed defendant with suit immunity is not sitting in state court waiting for a year, making the impossible hops and choice of whether to participate and lose their right or not participate and get a default judgment. And that's precisely what the protection in this statute, the history refers to. I think default and participate, those are two sides of the same coin. The history says default, but what really it's looking to do is preserve status quo. The government's approach leaves the defendant exposed to litigation, which causes them to lose their right and also gives them a mechanism to literally preclude review of their own decision. If they just show up in good faith and say we're thinking about it, they could show up in bad faith and say we're thinking about it. That can't exclude a party with a federal right to the access to a forum to dispute that and resolve that. As I read this statute, specifically subsection 2, your right to remove is specifically predicated on the failure of the government to appear. In my hypothetical, the government appears. Once the government appears, how do you get around subsection 2? The government's probably delighted to hear you ask that question because it suggests that all they need to do is appear and do nothing more. Oh, God. I'm not a good person with this stuff. Yes, I get it. This is not a model of clarity. It's not, and that's why you have to. My question to you is once the government appears under subsection 2, how do you have an automatic right of removal? Because they have to appear for the purpose specified. There's no other purpose specified. If they appear and don't follow their mandate to report a prior determination, they're not complying with their statute. I got my boss handing me these papers the day before yesterday. That's all. I'm here. I'm appearing. I don't know what's going on. That's this case. What's supposed to happen then? It's exactly what's contemplated. No one is expecting the U.S. attorney to get a case in 15 days. It's not what's expected because you're telling us that you have an automatic right of removal, and if I read this subsection 2 and tell me if I'm wrong, that's predicated on the government not appearing. Not appearing for the purpose defined and specified in L1. If you just read appearance in isolation, it looks like that's all it means, and you can read it the way you're suggesting. But you can't read it in isolation. These are two subsections of the same position. It seems to me that there's a very different reading that we could give to L1. L2 does seem to contemplate the failure to appear, which was one of the problems under the prior statute. The government just wouldn't appear, and you were just out of luck. But if you read L1, it says that the attorney general is to appear within 15 days and advise such court as to whether the secretary has determined. Now, there's sort of three possibilities there. You can advise that the secretary has determined that the entity is covered. You can advise that the secretary has determined that the entity is not covered, or you can advise that the decision as to whether the secretary is determined is unknown to the attorney general at this time. Now, that's a pure advisal. Now, such advice, that advice has been given. That's L2, section 2. Shall we deem to satisfy the provisions of C? Now, all three possibilities seem to me to be on the table under the first sentence in L1. The last one I might quarrel with a bit, but I would say first that they all are funneled into the second sentence, and that shows you what the purpose is. Let me say it this way. There is no purpose to show up and say, we don't know if the determination has been made that is a past prior determination that's on a piece of paper, and you can pull it off the shelf. It's available in minutes. If they say we don't know that, it defies credulity because all you're being asked for, this is an argument to them. If that's true, that this is a piece of paper that anybody can find and pull off of a shelf, then why do we even need this provision? I mean, removal could happen simply by filing, for example, a document that showed that the entity had been deemed by the secretary. You know, the reason I am the last sentence of subsection 1 is so important to me is because there is this language about the scope of employment piece that is injected into subsection 1. So you can have a deemed entity, but now that such advice also means that you are attaching to that advice a determination that there was also that the individual physicians are within the scope, and that's the part that I'm really grappling with. I would say, Your Honor, you do not have to worry about that from the standpoint of the federal government because they're not bound by a constructive determination that achieves removal. It's much like section 2679D of the Westfall Act. That's where a person asks for immunity in state court, and the government doesn't think the person has immunity, but it recognizes, and the Congress recognizes that we want that dispute to play out in federal court, and for those cases, the government roundly embraces the notion that those disputes should play out in federal court. Your Honor, counsel, what do we do with the Westfall Act, the D3 of the Westfall Act, which affirmatively gives a disappointed federal employee a right of appeal of an adverse decision? You should look at it the way the court out of the Philadelphia case we cited looks at it, and that was greater Philadelphia. That court had no difficulty saying, I see what's going on here. L2 is the functional equivalent. It's not the same, nor should it be the same. And the reason it's different and better, in my view, is because the government has a hostility towards deemed federal employees. It doesn't have a hostility towards its own employees. That hostility is replete in the legislative history. It's noted in the 92 to 95 history, so what was needed here that's different and better than D3, 2679D3, is Congress had to change the may remove to get those disputes to play out in federal court to shall remove. Because if it was a may remove, you'd see what we're seeing here. You'd see an appearance to do nothing. Was it your responsibility to file a notice of removal if you thought that the government hadn't followed the statute? Well, we did. Our clients did file a notice of removal. But they didn't file a notice of removal after the attorney general appeared. No, because the attorney general appeared and said, we're thinking maybe we're going to appear in your behalf. In your view, trigger a right of removal. I think that was such advice of L1. It wasn't your responsibility to say, look, a non-decision is still some kind of a decision. We now know that the attorney general's got this under consideration. We want to be in federal court. Totally, totally fair criticism. And we could have made the judgment call at that time what was happening. The music that was playing along the side was another dispute that this court resolved in the Ninth Circuit, where the government was trying to deny coverage of these cases based upon an action it took that was declared unlawful. So here's the big history. The government covered these cases arising out of this hospital activity for years. Then it stopped. And when it stopped, it coincided with an action the government took to change the scope of this center's project. That action was declared unlawful by this court. And so because of that, sorry, if I can finish that thought. Otherwise I'll lose it. Because of that action, there was some, I'll just call it hope, that the government, okay, we recognize we fought that battle. We lost. We're now going to return to where we were with these cases, and we could have a good faith expectation that the government might do what it used to do. Could we have said that, could we have reached a different conclusion and said, you know what? I doubt they're going to change their ways. And we're waiting for bad news. It's inevitable. Let's remove. We could have made that judgment call. I don't. There's no lachies concept built into the statute. There's no time limit built into the LT statute, which I think is one of the, I'm sorry. There's no time limit. It's 15 days. Well, there, sorry, there's no time limit that works against the outer time limit for the removal. So it's your position that you had a right to remove this at any time? Yes. After an L1 period. After the government appears and doesn't do what L1 mandates. Yes. And I think that makes sense because government is supposed to, if you read L1 the way we read it, it's supposed to achieve removal for the dispute to play out in federal court, which often is not even a dispute. 90, and this is, I don't have statistics, but I'd say the large majority of the time, the government voluntarily does what it's supposed to do. So if you were to remove under L2 prematurely, a huge percent of the time you'd be doing the government a favor because it's going to voluntarily step in and substitute and do everything it does. L2 is there and L1 is there for this sliver of cases where there is a coverage dispute. So that plays out in federal court. Let me, before you, I know we're keeping you over your time, and I apologize for that, but before you sit down, I just want to be perfectly clear. When do you think the day one that you could remove was? Well, that's what, going back to the very beginning of my argument, we don't know precisely the start because we don't know under 233B when the Office of General Counsel at HHS does its job under 233B, which is notify the local U.S. attorney. That notification is the start of the clock. What we have done, which isn't required by the statute, is to tell the Office of General Counsel and the local U.S. attorney at the same time, even though that's not the notification scheme 233B contemplates, so that we do have some start time. We do know when they've learned of it. We've been told they don't know it the way they're supposed to know of it. We only know of it when the Office of General Counsel tells us, but we have told them so that we can pinpoint the start time, and then from there we count 15 days. Your theory of removal is inconsistent with 28 U.S.C. 1446. So is it your theory that once we get into this 233 scheme, 1446 specifying what you have to do to remove is a dead letter? So I would echo what the, again, I think the judge in the Greater Philadelphia case, out of Philadelphia, nailed that answer, too, and said this is a comprehensive removal scheme in 233. And so 1446 procedures supersedes 1446. I don't even think it's a question of supersede, Your Honor. It just exists. Because they're inconsistent. They exist independent of each other. So which one controls? The one that arises out of the Public Health Service Act. And what the court explained in that other case is there's no cross-reference to 1446. So we can, for purposes of wrestling with this obligated case, we can just assume that there is no 1446. Is that your position? I would say absolutely, Your Honor. That is the exact conclusion that the court reached in Philadelphia. And it said it better than I'm saying it right now. But one thing it did say is that L1 and L2 were enacted against the backdrop of 233C, which allows the government to remove any time before trial. So that's as generous of a removal as you could possibly get. And then 233L1 has a constructive satisfaction of that provision for purposes of removal. So I do think it holds together. And there's no cross-reference to this other provision. And it makes sense from a, what's at stake here? A federal immunity, a federal program, and the ability to serve an underserved community. If you don't do it the way we're saying, then this community doesn't have any assurance that the government is going to live up to its promise that it made even before these provisions were enacted. It promised these folks they're going to have a way to challenge. And their position here gives them the ability to cut that off without review. So you think that 1446 just simply does not have any bearing on this case? No bearing on the 1833. But 1442 and 1447 would? Yes. So I think 1446 applies to 1442. Counsel, what's the case in our circuit that dealt with a change in policy that was found unlawful? The Eisner Health case. I can get to the site by the time I get back up to the podium. But it's 2021. Eisner Pediatric Family Health, I think, is the plaintiff. It changed. One of the problems in the case was the wrong name was chosen by predecessor counsel at the outset. It wasn't detected until very late. So the name is actually a tricky issue. But I'll get that citation. We've taken you well over your time. I think we have the gist of your argument. I will give you a couple of minutes to respond to the opposing counsel. Thank you. We will now hear from the government. Mr. Soder. Good morning, Your Honor. And may it please the Court, Kevin Soder from the Department of Justice for the Government. As we've explained in our brief, we think the Court lacks appellate jurisdiction. But I think the framework of the Health Centers Act that's being discussed this morning will frame that analysis in a useful way. So I'd like to start there. And I'd like to start by going mechanically through the text of Section 233L. Because I think there is the discussion that's happened this morning has, I think, confirmed that the government's reading of how L1 and L2 fits together is really the only way to make sense of a statute. And the discussion has done what? I think it confirms that the government's reading is the only way to make sense of these. Your questions to him have confirmed your conclusions. That's not how we usually operate. Sorry. What I meant to say, Your Honor, was that I think the defendant's position just cannot be reconciled with the plain text of this statute. And it raises questions that are essentially impossible to answer. Counsel, we're an equal opportunity persecutor here. Hopefully we can beat up on him now. It's your turn. Great. I'm very excited, Your Honor. So I think one conceptual point to keep in mind that I think is a point of common ground. Can I ask the statute to do what you said you were going to do? Sure. So what L1 says, I think there's some language that wasn't discussed quite enough. So the key language starts with what is supposed to happen within 15 days. What is the Attorney General supposed to do? I'm looking at page 12 of the government's agenda. It says within 15 days after being notified of such filing, the Attorney General shall make an appearance in such court and shall advise such court as to whether the Secretary has determined under subsections G&H that such entity, officer, etc., is deemed to be an employee of the public health service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding. And I can't imagine a clearer way for Congress to say what is. . . Oh, my goodness, you can't imagine a clearer way? On that portion of the sentence, I can imagine a clearer way to write the statute as a whole. It is not a model of clarity, as Your Honor mentioned. Why weren't you simply under an obligation to advise that the Secretary had deemed Eisner to be covered? Because there are two different determinations going on here, as Your Honor mentioned. Right. There is the annual prospective determination, which I've sort of thought of as sort of like you've drawn a circle. You've got the meets and bounds of the coverage. The year is one piece. The scope of employment is another. It has to be medical services. But given the timeline in here of 15 days, that's a very, very short leash for you. I understand that. We're very sympathetic. But we've got a piece of paper in the record that is a deeming decision. That's the way it's listed. It's labeled that way by HHS, and that's an up-down decision. It doesn't take anything. This is a phone call from an AUSA to somebody at HHS. Of course, it takes you three times, three phone calls to get to the right person. But once you get there, they're going to say, I'm holding the certificate in my hand. They have been deemed to be a PHS. Now, whether they're within the scope of their employment is going to require investigation and knowledge of these facts, and we don't expect you to do that within 15 days. Correct, Your Honor, and that's why I think that when you read the end of that sentence, you have to see that what the Attorney General is being asked to provide is not advice as to whether the health center was deemed for the year in which the injury occurred, are the words that I believe defendants counsel said. Deeming is a term of art in this statutory scheme, okay? And if Eisner had already been deemed a PHS and the secretary has made that determination, there's a piece of paper that reflects that, and the AG goes into the courtroom and says the decision is still under consideration whether or not Eisner has been deemed, why is that correct? I mean, I think that it is obviously incorrect. And so if it's incorrect, does that allow us to adopt the interpretation of your friend on the other side, that that is actually peculiar to appear because it's so clear that Eisner had been deemed a PHS, but the AG said it was under consideration? No, Your Honor, and two points I'd like to make. First, I think it is entirely unclear what the answer is to the question the statute asks, because the statute asks whether they were deemed with respect to the actions or omissions that are the subject of such civil action or proceeding. And as everyone agrees, a case-specific determination of coverage cannot be made within 15 days. Interesting. It's interesting. I mean, that language is very, very ambiguous, the acts or omissions that are subject. I mean, this is just general tort language, the language that if we really wanted to nail this down, Congress should have said with respect to the scope of their employment, which was a technical term that was found in 233A and B. That's not what it says. The second sentence deals with scope of employment. But all the second sentence says is if you've made that decision, we are now going to decide that you have satisfied for the time being, I regard it as a rebuttable presumption, that the entity is covered and they're acting within the scope of their employment. DOJ, take whatever time you need to figure this out. And if they're not within the scope of their employment, come back and make that certification. We'll take it back to state court. Your Honor, the sentence is just, I don't think they can be read that way. I think that they have to both be in contemplating a case-specific determination because otherwise you would have this quite significant change being made. By a requirement being given the 15 days, that's an utterly unreasonable period of time. I don't think that's reasonable for us to expect you to come up with a decision about the scope of employment within 15 days. I think that's why it's exactly a reasonable period to do what happens here, which is to say we've just learned of this case. And we're going to take another year to figure this out. Congress gave us 15 days, and we need another year to figure this out. So I do want to address sort of in general what happens in this, is there's a back and forth between HHS and the deemed health center. Your Honor, before we get into generalities, let's say you walk into court and say, this is under consideration. We don't know. We haven't investigated. We haven't gathered enough information to answer this question. At that point, what are they supposed to do? Your Honor, they're supposed to continue on with the case. The case remains a case that the plaintiff chose to file against the defendant. When they are removed six months later, you're going to be in court saying it's not timely because it fails to comply, among other things, with 1446. So this provision only allows them to remove cases in this category when the Attorney General fails to appear. And that serves the limited purpose for which Section L was added to the statute in 1995. So what was the time limit under which they were obligated then, once you came into court and said we're thinking about it, to remove? There is no opportunity for them to remove once the United States enters an appearance. That's what the plain text in L.C. says. Yes. So there's not an hour limit because the clock never starts to run for them. When the Attorney General appears, the condition precedent, as the unpublished decision of this Court stated in the Babbitt case, is not met for L2. It says if the Attorney General fails to appear. But once you fail to appear, what are their options? If the Attorney General fails to appear, then they can petition the Court and remove the case. And then that is a separate posture. If they go in there and say nothing, what are their options? Your Honor, I don't think it comes up because the appearance that is contemplated by the statute is the type of appearance that happened in this case. And that's why. It shall be removed. It simply is removed. It doesn't have to be on motion. Upon electronic petition of the entity. Upon petition. Yes. Okay, go ahead. I think sort of stepping back, the competing ideas that you have here of how the statute is supposed to work is, one, what the government has offered is that in 1992, Congress enacted the statute that did not have the subprovision L at all in it. Removal decisions were undisputedly entirely at the discretion of the Attorney General. The reason Congress added this section was that it saw that at least one default judgment had been entered against the health center, and it wanted to prevent against that happening again. And so what it did is it made sure that someone would show up in state court within 15 days, and what's happened in this case is if you hadn't shown up at all, then on their motion they could have petitioned for court review and gotten some hearing as to whether they were covered. That would be L-2. Yes, sir. If you had shown up and said they're covered, then that would be fine. You could come back later and say they're not within the scope of their employment. We would be in federal court, and they could appeal that, and they could appeal that to the district court and then appeal that to us. Now, if you come in and say, well, the matter's under further review, they've got no remedies whatsoever, and then you take a year later, you come back and say, no, we decided they're not covered, and they've got no federal review whatsoever. They are worse off than if you hadn't shown up in the first place. Your Honor, we are not saying that they have no remedies whatsoever. The only issue in this case is whether they could invoke this particular removal provision. They have not. What's the remedy then? So, you know, it hasn't been something they have attempted in this case, but I think I'm not aware of a similar statutory problem with some alternatives that might happen that might get this before a court. One is the form in which this case was filed was a state court, which, of course, is a court of general jurisdiction. A plaintiff filed a case against a defendant. That defendant claims that a federal statute entitles them to not be the correct defendant to that lawsuit, and I'm not aware of a similar statutory bar that says that defendant can't raise that defense in the case in state court that's pending between the private plaintiff and the private defendant. There is an important distinction that I want to make sure to emphasize. Their right, that vitiates their right to have these matters adjudicated in federal court, which is what Congress wanted under these provisions. Your Honor, I don't think there's evidence that that's exactly what Congress wanted, is to give them this sweeping right to a federal forum, and I think the best evidence of that, if you're looking in addition to the text. The statute has an automatic removal provision. I don't know, off the top of my head, I don't know of any statute that has that, so the intent of Congress to get these two matters in federal court seems to me to be perfectly clear. Your Honor, I don't think I would read that as an offensive automatic removal provision, but more importantly I think it would step back and defend. Defendant's counsel discussed the Westfall Act. The Westfall Act is the statute that allows federal employees to get their claims of that they were acting with the scope of their employment into federal court. The most relevant provision is 28 U.S.C. section 2679 D.3, and that provision is in some respects similar to the way that defendants want this court to read this provision here, but the defendants would make this deemed health center statute more generous to these deemed health centers than the rights that federal employees get. I agree that D.3 is perhaps the government's strongest argument, and maybe it's the best argument to the question I'm about to ask you, but the Supreme Court has made very clear in the context of these kinds of cases and DeMartinez that there is a very powerful presumption in favor of federal review of the decision to cover or not to cover. And, in fact, the DeMartinez case helps us understand this works both ways. DeMartinez covers the right of a plaintiff to challenge the government's decision that an employee is covered because it may deprive them of certain kinds of remedies. This is the flip side of that. What happens when the government tells the employee, the nominal PHS employee, that they're not covered under the scope of employment, and now they would be denied a right to do that, and the court told it up one side and down the other in DeMartinez. There is the strongest of presumptions against a federal forum for that. Now, I think D.3 is probably your best argument that Congress knows how to say this, and it didn't say that here, and so they're out of luck. But it also suggests that maybe we ought to be looking at 23, at 23, to try and figure out how they can get this determination made in federal court one way or another. So two points here on our first. I think looking at 233 itself, this is a preexisting immunity statute that predates the Westfall Act. There are several sort of piecemeal statutes that often don't need to be used anymore because actual employees of the government can use the Westfall Act, and the way those statutes worked before the Westfall Act was enacted was the process that I am talking about now. It was if the plaintiff chooses to sue the defendant, not the United States in state court, the defendant can assert on a motion to dismiss or a motion for summary judgment that the suit should not proceed against them. What the plaintiff cannot do, and it is important to recognize here, sorry, what the defendant cannot do is seek to compel a state court to substitute the United States as defendant, and this statute similarly does not entitle the defendants to a right to compel substitution of the United States as defendant in a federal forum. The question is not whether it can compel the United States. It's whether it can get review in this proceeding of an adverse determination by the United States. It turns out in DeMartinez you can if you're a plaintiff. It turns out under the government's argument here you can't if you're the defendant. I think the key to the DeMartinez case was that in that case if the decision that was at issue, or sorry, if the court hadn't read the statute the way it did, the plaintiff would have been completely out of a remedy. The plaintiff would have lost their lawsuit because the United States would be able to substitute it and get the case dismissed. Here it is not the same thing because the defendant would not be left on the hook for the judgment. The defendant has the opportunity to raise federal defenses in a state court to get review of federal questions through the state court appellate system and up to the U.S. Supreme Court if they have a significant question of federal law raised in their lawsuit. Having been denied a remedy in DeMartinez, of course, is a matter of substantive FTCA law. That doesn't really have anything much to do with getting review of decisions. There might be other reasons why you wouldn't want to face the United States in such matters. But it certainly is what seems to me a gross asymmetry that a plaintiff can get review of that decision by the Department of Justice and the defendant cannot. So I disagree, Your Honor. I think this case, there are mechanisms that may well be available that the defendants have not attempted. And that's why the government would be comfortable with a state court adjudicating the questions to whether it had made the right decision. It would be okay with the state court making that decision. So, Your Honor, I don't want to get ahead of an issue that hasn't actually been litigated in this case. The thing I want to make clear that we are... A hypothetical question. And you just told us that this is the old scheme. And this is the remedy. Yeah, but I just want to make sure the government's okay with that. I don't know of a similar statutory bar that would prevent it, except that the state court... The APA. Why can't the adverse coverage determination be reviewed separately through an APA? Your Honor, we haven't taken a position on that issue in this appeal. We think this appeal is only about the narrow question, whether Section 233L2 authorizes removal in these circumstances. And the best conclusion that the court can reach about that is that it doesn't because the Attorney General kindly appeared in state court within 15 days. I'm sorry to keep belaboring this, but it's a question that I've been scratching my head about since I first read these wonderful briefs. Once you appear, what sort of removal right do they have? None under Section 233 and anywhere. I'm not aware of a removal right that they would have. That's once you appear and say, I don't know what's going on. I got this two days ago. I'm trying to figure it out. They have, under the government's view, no removal right. Correct, Your Honor. There's no federal question presented in the case. I don't know of a basis for them to remove. Of course, if there was a person in your jurisdiction or something, they could. They're a federal health delivery entity. They've been given essentially malpractice insurance, and the government has decided that that insurance doesn't cover the scope of this dispute. Now, what end of the hypothetical do you have to discover? You haven't decided anything. Correct, Your Honor, and that is the way that these immunity statutes have worked. I don't think it should be surprising that when the public fisc is at issue, Congress entrusted the Attorney General with making these decisions. It did not insulate those decisions from all forms of review, but it did leave it to, in this situation, the plaintiff to choose a forum in which to file, and the defendant had a very limited removal right that was constructed to prevent default judgment and stuff like that. You rush back to your office. You go to work. A week later, you determine he's deemed. All of this is covered by the statute. They're entitled to have this adjudicated under the Federal Tort Claim Act and so forth. What then? Are they stuck in? They were 100% right. You came back 20 days instead of 15 days. They're completely right. You did your homework. You came back into court and said they're right. They're covered. Do they then, in that scenario, have any removal rights? If the government entered an appearance within 15 days, no. No. If they come back the next day, day 16, day 17, and confess they're right, the removal, there's no right to remove. If, in the government's view, the case is covered, the government has an obligation to remove the case, and the government would remove it itself, and that is how this works under this scheme. The government would say, we've advised the court that this is a case that should be removed under Subsection C. I'm saying you might remove it, but they have no removal rights. Their removal rights are limited to what's in L2, which is if the Attorney General fails to appear. And I think if we go back and look at why Congress added this provision, it was adding it because it was concerned that when no one was appearing in state court at all, default judgments could be entered, and that's why it put this very short timeline on, that my understanding is it's shorter than many state courts would be able to enter default or would have an answer filed on. But no one expected that the case-specific determination that's referred to in L1 could be made within 15 days. And I think no one also expected, I think the sort of consequences at issue here would be under the defendant's reading of L1. Every single time a case is filed against a deemed health center for anything, regardless of how far it may be from their scope of employment and from the scope of the grant, the Attorney General will be required to come to state court, advise the court that they're thinking about it, and remove the case immediately and keep it in federal court, even though the Attorney General has not determined that the case should proceed in federal court, and even though the Attorney General has made nothing close to the determination mentioned in the final sentence of Subsection L1 that Judge Desai was discussing about our scope of employment. We've taken you well over your time. I don't want to stop any questions from my colleagues. Judge Desai, do you have any further questions? Judge Berger? I'm good. Okay. Thank you, Mr. Sutter. We appreciate it. Thank you. Mr. Winokur? Good morning. May it please the Court, Sam Winokur on behalf of Plaintiff and Appellee Raizel Blumberger. I'd just kind of like to dive in here and say that the language in L, in Subsection L1, that this is with respect to the actions and our omissions that the lawsuit is based on, that is Congress saying that this needs to be a case-specific inquiry. That is, in other words, a scope of employment decision. What Congress did here when it amended the statute, was it in an effort to cure late decisions by the Attorney General, was it took that scope of employment decision and it took it from the Attorney General and it gave it to the Secretary of HHS. That's why it satisfies Subsection C and allows the case to be removed by the federal government. And it's important to do this case-specific inquiry because, for one, the prior team... But there's two different inquiries. One is whether the entity has been deemed, and therefore its employees are deemed to be employees of PHS. And the other is the scope of employment. Those are two different, and they're made by two different entities. The Secretary is charged with deciding whether they have been deemed to be a covered entity. The Attorney General is charged with deciding whether they were acting within the scope of their employment. I disagree, Your Honor. I believe that under Subsection L1, the Secretary of HHS makes the decision of scope of employment, and that satisfies Subsection C, which would traditionally be the Attorney General that's making that decision. But if the Secretary gives a positive cover determination under L1... How do you square that with 233C, upon certification by the Attorney General that the defendant was acting in the scope of his employment? I square that by the last sentence of L1, which says, Such advice shall be deemed to satisfy the provisions... Unfortunately, the word deemed there is sort of unfortunate because this is different from the deeming that we make about the PHS. But if we just strike the words deemed, we can say, Such advice shall satisfy the provisions of Subsection C. And then what it creates is, in my view, I think, is a rebuttable presumption. That is, the Secretary has determined that it's been deemed, and the Attorney General has not yet made a contrary decision about scope of employment, so it is deemed to be within the scope of the employment. It can be removed, and the Attorney General is subject to defeasement. That is, the Attorney General can come back in and say, This is not within the scope of the employment. I read the statute differently, Your Honor. I read it as saying that if the Secretary makes this decision, which is with respect to the actions or omissions that the suit is based on, the case-specific inquiry, then the Attorney General doesn't have to do anything. It satisfies what the Attorney General normally has to do. It satisfies the certification that the Attorney General would have to make. That's why it then becomes a removable case. And the prior deemed decision, that's just a Dr. Tilley's employer. I don't believe that he's even named in that. So how could HHS just not? Because by statute, employees of a deemed entity are deemed to be employees of PHS. That's pretty clear in the statute, I think. Yes, but in the 11th Circuit, the Adam case said that one of the things that needs to be looked at is whether the contract between the deemed entity and its employee doctor was with the doctor individually or with his professional medical corporation. Because only in the foreword could he actually be a deemed entity under this statute. So there's other considerations that have to be taken into account. Also, you know, was there Dr. Tilley moonlighting? Was he? Who's plaintiff? What was her relationship? I think all of these things matter for the Secretary to make this decision. I think those generally go to the scope of the employment decision. Again, the Attorney General's obligation here to advise the court is on a very, very short leash. And it looks to me like it's just an up-down decision. Has a certificate of deeming been issued? In this case, the answer was absolutely clear, yes. Yes, Your Honor, but I disagree. And I think there needs to be this case-specific inquiry. And I believe in the unpublished case of the Sherman, this court stated that the prior deeming decision was not enough. And just recently, in September, there was a case out of the Western District of Pennsylvania, Doe v. Centerville Clinics. And that court also said that a prior deeming decision by itself is not sufficient for removal. It has to have this case-specific inquiry. And I think that the defendant's or Dr. Tilley's reading does make this statute completely superfluous. I think the court asked this question earlier, why would Congress even do this? Why not just take that prior deeming decision and attach it to your removal, and off to federal court you go? Congress wanted there to be an actual decision by the secretary of a case-specific inquiry. Counsel, if the Attorney General had decided that the doctors were employed by a deemed entity and were acting within the scope of their employment, would you have the ability to challenge that decision in federal court? Yes, Your Honor. And that's the DeMartini's case? Yes, Your Honor. Okay. And so you get the right to do that, but the doctors don't. Well, I think that the doctor does have the right to file an APA action, and I think the El Rio case is the case that talked about that. And Dr. Tilley has a great example. I recall that. That was an action by the deeming entity denying them deemed status. That's a very, very different kind of action. I understand an APA action here, filed here, would be a collateral proceeding. It would do what? Require the state court to hold in abeyance. The whole thing will be proceeded under the APA. I think that's the only remedy that's available. And I don't think that the statute, Section 2679, which was, I believe, enacted after this, did give a very specific way for a defendant to challenge it. That's the inquiry, and I think that is probably the government's strongest argument here. Yes, and Congress obviously knew how to give that ability to challenge if it wanted to, and it didn't in this case. And to answer some other questions that were asked previously, I think 15 days is very short, and if that's not enough time for HHS, the Secretary of HHS, to actually come in and fix this issue of no timely appearances, I think that's for Congress to come back in and fix. I don't think it's for the court to come in and read language into the statute that's not there. And I'd just like to make another point that I do think that 1446 does give a time limit. Dr. Tilly, in his reply brief, stated that we had waived the timeliness argument, but on the very front page of our removal, we did state that removal wasn't timely and there wasn't any type of, we didn't say only as to 1442 or to 233. So I believe that objection was preserved, and so I do think that once the defendant, like in 1442, once the defendant has some type of notice that this 15-day period has run, then that 30-day time limit should start like in every other, you know, in most other removal statutes. But when does the time start in this situation that I keep asking about, where the government says we don't know? Well, I think in the situation where the government doesn't know, that clock does not start because the government is satisfied. And what the defendant can do there is, one thing they can do is they can ask the state court first day and say, looking at 233, we need to wait for a decision. Obviously, that's not good for my client, but I think that's probably the appropriate remedy for what the defendant can do. And I don't think that defaults are also much of an issue. In this case, Dr. Tilly filed his answer before his employer even sent the paperwork to HHS. So I don't think filing an answer and avoiding default is really, in practicality, a very big concern. But if you're a counsel, one of the things that gets you up in the middle of the night is, when is my time to remove start, and when is it over? And you give me no guidance on that issue. I mean, you may not care about it, but in terms of administrating, the fair administration of this statute strikes me as an important question. Yes, Your Honor. I think that the time to removal would only, that clock only starts if there is a complete failure to appear. The Attorney General just doesn't appear on court. So Attorney General comes in and says, I don't know. When does the clock start? There is no clock, Your Honor, because the statute can remove at any time. No, Your Honor. I don't believe that if the Attorney General comes in and says, this is still under consideration, we don't know, then L-2 hasn't been activated. Therefore, there's just no ability to remove the way the statute is written. Unless Your Honor has any other questions. Okay. Thank you, Mr. Attorney General. Thank you so much. Thank you very much. Mr. Peters, I'll give you two minutes. I hope you'll take into account that we have asked a lot of questions. Yes, Your Honor. We've been among a lot of people this morning. I recall. It's been a good meeting, thanks. All good intentions. The Ninth Circuit decision I was referring to, Your Honor, is it 2021 Westlaw 3878647. It's an unpublished decision dated August 31st, 2021. I want to start with the APA piece. That's come up a time or two. When the government promised in a Federal Register notice in consultation with HHS in 1994, before these two L-1 and L-2 provisions were enacted, that there would be judicial review, and has since reiterated that in the FDCA manual, and it still exists in that manual to date. There's absolutely no reference to APA. Apart from that, I'd say the APA is a woefully inadequate remedy for suit immunity. For suit immunity, meaning I don't have to be a defendant in this case. You have to be able to assert that in the case for it to have any meaning. What you can't do that would have any meaning is to bring a separate lawsuit against the federal government where there's an ongoing separate proceeding and being due courts at once to try to say that you shouldn't even be in either. This observation was made, again, better than I stated it in the Pizer v. Penobscot case out of Maine, which sadly does not have a West law site. I don't know why, but it has a Bloomberg law site only. The other thing I think is worth stressing, and then I'll sit down, is the delineation between the Secretary's roles and decisions and the Attorney General's roles and decisions was a really big deal in the 1995 amendments. And Congress made the deeming determination final and binding on the Attorney General for really good reason. And I think that has to be dwelled on for just a moment when you look at the significance of the decision in 233-L1, which makes no reference to a discretionary any kind of decision by the Attorney General. The Attorney General doesn't have a role in 233-L1 other than to report a decision to have the effect of a removal. And I'd say, as to the D-3 issue, I think to this provision, if you use the same toolkit that Justice Ginsburg used in DeMartinez, you can solve the problem the way it needs to be solved, and all the tools that she used to resolve a, let's say, less than perfectly worded statute then, were used to reach the conclusion that judicial review is almost always going to be the answer, and whenever Congress wants it not to be, it uses different, better, far more clear language. We gave an illustration of that in a citation within the Medicare context. Congress literally says we're precluding judicial review, and kind of here's why. That's not said here. And to the contrary, every other signal, there are four shells in 233-L1. And in the second provision, there is a mandate for removal, mandate for judicial review, mandate for a stay, mandate for a judicial determination, and mandate for an order. Congress doesn't take out those kind of tools for federal courts to be petty functionaries, is the phrase from the back note, to rubber stamp the government's decision. The government wants you to basically just be in the position of rubber stamping, there's no coverage here, don't do what the Ninth Circuit did in the Lane County case. Thank you, Your Honor. Thank you, counsel. I do want to thank all counsel for your patience with the court today. We've had some sharp questioning, but I think that it expresses our own frustrations and a very, very difficult statute. We appreciate counsel's insight into the statute and your patience with us today. Thank you all. Thank you, Your Honor.
judges: Parker, BYBEE, DESAI